## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| DEVELOPMENT SERVICES GROUP, INC. | ) | |
| 7315 Wisconsin Ave # 800E | ) | |
| Bethesda, MD 20814-3255, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE | ) | |
| 950 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20530-0001, | ) | |
| | ) | |
| ERIC H. HOLDER, JR., in his official | ) | |
| capacity as Attorney General, | ) | |
| U.S. Department of Justice | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, DC 20530-0001, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Development Services Group, Inc. ("DSG") files this complaint against

defendants United States Department of Justice and Eric H. Holder, Jr. in his official capacity as

the Attorney General of the United States (collectively, "DOJ" or "Defendants") pursuant to the

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"). DSG seeks a declaration that

Defendants acted in a manner contrary to law and abused their discretion in refusing to consider

DSG's response to Defendant's solicitation for applications under the State Advisory Group

Training and Technical Assistance Project ("SAG TTAP"). DSG also seeks an injunction

directing Defendants to consider DSG's SAG TTAP application.

## INTRODUCTION

This dispute arises out of Defendants' refusal to consider DSG's response to Defendants' fiscal year 2013 SAG TTAP solicitation.  DSG timely filed that response through Grants.gov – the federal government's internet clearinghouse for applications for federal financial assistance – on February 25, 2013.  After DSG received an electronic mail confirmation of the filing, it received another electronic communication stating that the application had been rejected solely because DSG included commas in the file name of one non-essential attachment to its application.  DSG later asked that DOJ waive this technical error and consider the response, but DOJ refused based on its apparent belief that it was powerless to grant such a waiver.

DSG now files this suit alleging (1) that DOJ erred as a matter of law in concluding that it lacked the discretion to grant DSG's waiver request, and (2) that DOJ otherwise abused its discretion in denying that request.  The relief that DSG seeks is modest – DSG asks only that the Court declare Defendants' actions to be an abuse of discretion and contrary to law, and that the Court enjoin Defendants to accept DSG's application for consideration.

DSG specifically alleges as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(e).  The declaratory and injunctive relief sought in this action is authorized by 28 U.S.C. §§ 2201-2202.  Judicial review of DOJ's actions is authorized under 5 U.S.C. § 702.

## PARTIES

2.      DSG is a small business incorporated under the laws of the State of Maryland. DSG's chief line of business involves assisting federal, state, and local agencies in connection

with programs addressing the needs of high-risk populations.  DSG provides technical and

subject matter expertise to such entities through training, quantitative and qualitative research,

evaluation systems development, community planning, materials development, information

systems and web development. DSG staff and consultants are experts in a wide range of

scholarly disciplines, practice fields, and topical areas including, but not limited to, juvenile

justice, criminal justice, minority health, corrections, systems improvement, substance abuse

prevention, mental health, child welfare, behavioral research, education and schools, information

sharing, and software applications.  DSG is a recipient of a number of federal contracts, grants

and cooperative agreements from various federal agencies including the United States

Department of Justice, for which DSG has developed CrimeSolutions.gov for the Office of the

Assistant Attorney General and the Model Programs Guide for the Office of Juvenile Justice and

Delinquency Prevention.

3.      Defendant United States Department of Justice is an agency of the government of

the United States within the meaning of 5 U.S.C. § 701(b)(1).  The Department of Justice is the

arm executive branch charged with administering the Juvenile Justice and Delinquency

Prevention Act of 1974, Pub. L. No. 93-415, 88 Stat. 1109 (1974) ("JJDPA" or "the Act"),

including the SAGTTAP.

4.      Defendant Eric H. Holder, Jr. is the Attorney General of the United States and is

therefore the official within the executive branch of the United States government ultimately

responsible for implementation of the activities authorized under the Act.

**LEGAL FRAMEWORK**

5.      The JJDPA authorized federal assistance to States, localities, and private entities

engaged in juvenile delinquency prevention (1) to aid such entities in their efforts to deter

juvenile involvement in delinquent behavior, (2) to support government programs that encourage accountability for such behavior, and (3) to provide training, technical assistance and other information that assists States in addressing juvenile crime.  *See* 42 U.S.C. § 5602.

6.      The JJDPA established an Office of Juvenile Justice and Delinquency Prevention ("OJJDP") within the Department of Justice responsible for carrying out and coordinating activities authorized under the Act.  *See id.* § 5611.  Among OJJDP's functions is the award and administration of financial assistance to States in the form of contracts, grants, and cooperative agreements.  *See, e.g., id.* § 5631 (authorization of formula grants to States and localities).

7.      As a condition of a State's receipt of formula grant funds under the Act, the State's chief executive must appoint an advisory group made up of volunteers and juvenile justice professionals to work with the State on initiatives to prevent juvenile delinquency. See *id.* § 5633(a)(3).  In order to support State advisory groups in their efforts to improve juvenile justice systems, the OJJDP has created the SAG TTAP as a nationwide project to provide those groups with training and technical assistance.  OJJDP administers this project through grants and contracts with public and private technical assistance providers as authorized by § 221(b) of the Act.  *See* 42 U.S.C. § 5631(b).

## FACTUAL ALLEGATIONS

8.      For the past six years, DSG has been selected by OJJDP to serve as the technical assistance provider under the SAG TTAP.  In that role, DSG has worked successfully with numerous States and Territories to achieve or maintain compliance with the requirements of the JJDPA.  DSG has also assisted States and Territories with the coordination and support of major reform efforts, and has provided training and technical assistance on a broad range of topics, including disproportionate minority contact with the juvenile justice system.

9.      DSG is the incumbent in good standing for the current SAG TAPP grant.  It enjoys an excellent reputation among stakeholders in the field, including States, consultants, researchers, and OJJDP.  DSG has received positive reviews for its performance under past SAG TTAP awards.

10.     On December 26, 2012, OJJDP issued its "FY 2013 State Advisory Group Training and Technical Assistance Project" solicitation inviting applications to provide "high-quality, innovative training and technical assistance to state advisory group members."  The deadline for submission of applications was February 25, 2013.

11.     The solicitation directs applicants to submit applications via Grants.gov.  In addition, the solicitation states that "Grants.gov permits the use of specific characters in names of attachment files, [including] A-Z, a-z, 0-9, underscore (_), hyphen (-), space, and period."

12.     The solicitation does not, however, indicate that the inclusion of attachments with non-conforming file names will result in the rejection of a proposal.  To the contrary, it states only that "Grants.gov will forward the application to [Office of Justice Program's] Grants Management System (GMS)."

13.     On February 25, 2013, DSG timely submitted its response to the FY 2013 SAG TTAP solicitation on Grants.gov and immediately received two electronic communications.  The first was titled "Confirmation" and stated that DSG's "application is currently being processed by the Grants.gov system."  The second stated that DSG's "application has been received by Grants.gov, and is currently being validated."

14.     Shortly after the second communication, DSG received a third e-mail from Grants.gov entitled "Rejection Notice for Application."  That e-mail indicated that one of the attachments to the DSG submission contained errors and that the application therefore could not

be forwarded to OJJDP.  The error referenced in the e-mail consisted of the inclusion of commas

in the attachment file name "1237-Financial Capacity, FS, Mgmt Rep Ltr.pdf."  The commas

appeared only in the identifying portion of the file name – as opposed to the file name extension

– and did not affect the integrity or accessibility of the file.

15.     The rejection notice, however, inadvertently escaped DSG's notice until March

18, 2013, when a staff member attempted to check the status of the application on Grants.gov

which showed a status of "Rejected with Errors."

16.     DSG staff then attempted to rectify the error by refiling the entire application with

Grants.gov after removing commas from the file name.  The Grants.gov website did not,

however, permit DSG to upload the application because the submission deadline had passed.

17.     DSG's President, Alan Bekelman, then contacted Marlene Beckman in the Office

of the Assistant Attorney General seeking assistance and guidance. Ms. Beckman spoke with the

Deputy Assistant Attorney General, Jim Burch, who advised that DSG contact Elizabeth Wolfe,

the SAG TTAP program manager in OJJDP.

18.     On March 21, 2013, Mr. Bekelman sent an e-mail to Ms. Wolfe requesting that

OJJDP waive the non-conforming attachment file name and accept DSG's application as it was

filed with Grants.gov on February 25, 2013.  Mr. Bekelman reasoned (1) that the file name error

was immaterial, (2) that the file itself was immaterial in that it was only a supplementary

financial background file, (3) that the file, even with the non-conforming file name, was

complete, intact, accessible, and readable, (4) that the application was otherwise compliant and

fully responsive, and (5) that OJJDP should therefore consider DSG's application along with the

other responses to the solicitation.

19.     Marilyn M. Roberts, Deputy Administrator for Programs at OJJDP, responded to Mr. Bekelman's e-mail to Ms. Wolfe on March 22, 2013.  Ms. Roberts mistakenly recharacterized the request as one seeking leave to submit a late application, rather than a request for waiver of an immaterial error.  Based on an incorrect belief that she had no discretion in the matter, Ms. Roberts concluded that she "must deny [DSG's] request to submit [its] application late" for three reasons:  first, DSG did not file its response in sufficient time to permit it to correct any problems encountered at Grants.gov; second, the solicitation placed DSG on notice that attachment file names could not include commas; and third, DSG did not contact the agency to request permission to file a late application within twenty-four hours per the terms of the solicitation.  Although she acknowledged that DSG was not the only applicant to experience the same or similar problems, she indicated that, in essence, her hands were tied, stating that OJJDP "appl[ies] the requirements of the solicitations to everyone in the same way."

20.     Based on prior experience, DSG expects that DOJ will make award decisions in June (or perhaps May) 2013 and issue awards in September 2013.

## HARM TO PLAINTIFF

21.     DSG is eligible for consideration for the SAG TTAP award because it is a qualified private entity that filed an application that was materially in compliance with the agency's solicitation instructions.  *See* 42 U.S.C. § 5667.

22.     Although there is obviously no certainty that DSG would receive the SAG TTAP award, were DOJ to accept its application for consideration, DSG has successfully competed for that award in prior years and is the current incumbent.  In light of this history of working in partnership with DOJ on the SAG TTAP – together with the strong track record that DSG has

established in the field over the past six years – DSG would be the applicant with the best chance of being selected in the FY 2013 competition.

23.     DOJ's decision to refuse to consider DSG's timely filed application for the FY 2013 SAG TTAP award deprives DSG of the chance to compete for a business opportunity for which it is uniquely suited and which has comprised a substantial portion of its activities for several years.  In practical terms, this guarantees that DSG will not be able to maintain a line of work paying approximately $300,000 in revenue for the base year and an additional $300,000 annually for three option years for a total of approximately $1,200,000.

24.     Moreover, the loss of the SAG TTAP diminishes DSG's opportunities (1) to partner with States and localities with future OJJDP and related procurements, and (2) to compete for contracts at the State level.  It likewise has an adverse effect on DSG's ability to compete for awards under cross-agency training and technical assistance arrangements.

25.     DOJ's decision thus not only precludes DSG from maintaining its existing business, but it also impairs DSG in its efforts to explore new business opportunities.

## CAUSES OF ACTION

## COUNT I

### ADMINISTRATIVE PROCEDURE ACT:
### Agency Action Contrary to Law

26.     DSG realleges and incorporates by reference paragraphs 1-25, above.

27.     The final agency decision to deny consideration of DSG's SAG TTAP application violates 5 U.S.C. § 706(2)(A) because it is based on an incorrect legal conclusion.

28.     DOJ's decision rests on an erroneous understanding that it lacked discretion to waive immaterial errors in DSG's submission.

29.     There is nothing in the JJDPA, DOJ regulations, or elsewhere in the law that would preclude DOJ from waiving or forgoing enforcement of non-substantive requirements in an award competition.

30.     To the contrary, both departmental grants administration regulations and government-wide contracting rules recognize the authority of DOJ to waive non-statutory requirements on a case-by-case basis.  *See* 28 C.F.R. § 70.4; *see also* 48 C.F.R. § 52.215-1(f)(3).

31.     Because DSG materially complied with the solicitation instructions – and because there is no prohibition against granting a waiver in this circumstance – DOJ had the discretion to waive the solicitation provision limiting the characters that may be included in file names.

## COUNT II

### ADMINISTRATIVE PROCEDURE ACT:
### Abuse of Discretion

32.     DSG realleges and incorporates by reference paragraphs 1-31, above.

33.     DOJ's decision to deny consideration of DSG's SAG TTAP application is an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

34.     The policy concerning acceptable characters in file names is a strictly non-substantive convention instituted to accommodate apparent system limitations in Grants.gov.

35.     A waiver of that rule in DSG's case would not afford DSG any unfair advantage vis-à-vis other applicants, nor would it unduly burden or delay the FY 2013 SAGTTAP selection process.  It would, however, provide DOJ with the opportunity to review an application that was filed on time by a well-qualified incumbent.

36.     In light of the fact that DSG timely filed its application and materially complied with the solicitation instructions, reason and equity dictate that DOJ should have waived the minor and immaterial irregularity in DSG's submission.

37.     DOJ's failure to exercise its discretion in this manner has amounts to an abuse of discretion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter an order:

1. Declaring DOJ's decision to reject DSG's application to be an abuse of discretion and contrary to law;

2. Enjoin DOJ to consider DSG's SAG TTAP application in the FY 2013 SAG TTAP award competition; and

3. Afford DSG such other further relief as the Court deems just and equitable.


Date:   April 15, 2013                    Respectfully submitted,


                                          /s/ Edward T. Waters
                                          Edward T. Waters (DCD No. 422461)
                                          Robert A. Graham (DCD No. 450345)
                                          Nicole M. Bacon (DCD No. 982538)

                                          FELDESMAN TUCKER LEIFER FIDELL LLP
                                          1129 20th Street, N.W., 4th Floor
                                          Washington, DC 20036

                                          (202) 466-8960 (telephone)
                                          (202) 293-8103 (facsimile)

                                          E-mail:    ewaters@ftlf.com
                                                     rgraham@ftlf.com
                                                     nbacon@ftlf.com